Michael B. Marion (Bar No. 035627)
Matthew L. Bycer (Bar No. 025391)
**BYCER & MARION**
7220 N. 16th Street, Suite H
Phoenix, Arizona 85020
Tel: (602) 944-2277
michael@bycermarion.com
matt@bycermarion.com
*Attorneys for Howard Holdings, Inc.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Howard Holdings Inc., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>Life Saver Pool Fence Systems, Inc., a Florida corporation; and Eric Lupton, an individual,<br><br>Defendants. | No. _____<br><br>**COMPLAINT** |

Plaintiff Howard Holdings Inc. ("Plaintiff"), by and through counsel, hereby submit this Complaint against Defendants Life Saver Pool Fence Systems, Inc. ("LSPFS") and Eric Lupton, alleging as follows:

1. Plaintiff and Defendants are competitors that sell a reinforced-pole mesh pool safety fence in the United States, and specifically in the State of Arizona.

2. The design of Plaintiff's and Defendants' products are based on the same design that has been sold, offered for sale, and publicly disclosed starting in 2010.

3. Despite selling, offering for sale, and publicly disclosing its reinforced pool safety fence since at least 2010, Defendants nevertheless applied for a U.S. Patent in 2016 directed to this reinforced-pole mesh pool fence.

4. The failure of Defendants to seek patent protection within one year of its initial sales, offers for sales, and public disclosures of its pool fence means that its design is in the public domain and any entity is free to make use of the disclosure.

5. Defendants intentionally withheld information from the U.S. Patent and Trademark Office, specifically that Defendants had been selling, offering for sale, and/or publicly disclosed its alleged invention, in order to deceive the U.S. Patent and Trademark Office and be issued a patent it would not be entitled to.

6. Defendants have and are using its fraudulently obtained patent in attempts to monopolize the market for mesh pool safety fences in the United States while interfering with Plaintiff's business.

7. Defendants have and are using the fraudulently obtained patent to create doubt over the legitimacy of Plaintiff's business and, in turn, attempt to inhibit Plaintiff's legitimate competition.

## JURISDICTION AND VENUE

8. This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, the patent laws of the United States, 35 U.S.C. § 1 et seq., and Section Two of the Sherman Act, 15 U.S.C. § 2.

9. This Court has subject matter jurisdiction over this action under at least 28 U.S.C. §§ 1331, 1332, 1338, 2201 and 2202, and under 15 U.S.C. § 15.

10. Defendant LSPFS has availed itself of the forum provided by this judicial district. Most recently, LSPFS is a plaintiff in the currently ongoing *Life Saver Pool Fence Systems, Inc. v. Howard.*, No. 2:22-cv-1556 (D. Ariz.), filed on September 13, 2022.

11. Defendant LSPFS has continuous and systematic contacts with the State of Arizona, including selling, offering for sale, and advertising its products in the State of Arizona continuously since at least 2010. Defendant LSPFS also has continuous and systematic contacts with the State of Arizona through its distributors in the State of

Arizona, including Life Saver Pool Fence of Phoenix, Life Saver Pool Fence of Arizona, Inc., and Secure Swim LLC.

12. Defendant Eric Lupton is the president and director of LSPFS.

13. Upon information and belief, Lupton is the sole shareholder of LSPFS.

14. Defendant Lupton is an agent, officer, manager, principal, and/or alter-ego of LSPFS and was at all times acting within the scope of such agency, affiliation, and/or alter-ego relationship; and actively participated in or subsequently ratified and/or adopted each of the acts or conduct alleged, with full knowledge of all the facts and circumstances, including, but not limited to, full knowledge of each violation of Plaintiff's rights and the damages to Plaintiff proximately caused thereby.

15. Lupton has purposefully and intentionally directed the acts of LSPFS as described herein, and, in particular, the intentionally tortious acts of LSPFS to the Plaintiff in the State of Arizona.

## THE PARTIES

16. Plaintiff Howard Holdings, Inc. is a corporation organized under the laws of the State of California.

17. Plaintiff Howard Holdings, Inc. is registered to do business in the State of Arizona as a foreign corporation under the name Jason Howard Inc.

18. Defendant LSPFS is a corporation organized under the laws of the State of Florida with a principal place of business at 1085 SW 15th Avenue, Suite E-#3, Delray Beach, Florida 33444.

19. Defendant Lupton is a resident of Florida with an address at 2547 SW 10th Street, Boynton Beach, Florida 33426.

## THE LSPFS TRIPLE-LAYERED SOLID POLE MESH POOL SAFETY FENCE

20. Residential pools present a unique safety hazard to homeowners and their families, and in particular, children.

3

21. Drownings are a leading cause of death for children 1 to 14 years old and residential pools are a leading source of drowning deaths.

22. A critical tool in minimizing the risks to children associated with drownings in residential pools is proper lifesaving pool fencing around the residential pool.

23. Some states, including Florida and Arizona, have statutes requiring residential pools to have enclosures.

24. Although there have been several pool fencing solutions created and implemented, such as wooden fences, wrought iron fencing and glass panel fences, a popular option for pool fencing are mesh pool fences.

25. Mesh pool fences generally consist of a number of fabric panels stretched between and fastened to upright, vertical poles that are inserted several inches into the pool decking. The fabric panels extend from near the top surface of the pool decking to near the top of the pole. A number of such poles and panels are used to completely enclose a pool.

26. Advantages of mesh pool fences include affordability, portability, and aesthetics over other pool fencing solutions.

27. One of the historic weaknesses of mesh pool fences are the poles themselves, whereby damaging a single pole of a mesh pool fence could compromise the integrity of the complete enclosure.

28. Therefore, having a mesh pool fence with a reinforced pole is desirable, and in particular, a pole that will maintain the integrity of the enclosure in event of damage to the pole.

29. By 2010, Lupton had started selling a type of pole for a mesh-style pool fence that consisted of three concentric layers.

30. The outer layer of the pole is a hollow aluminum pole, the middle layer is a flexible plastic pole made from polyvinyl chloride (PVC), and the inner layer, or core, is a solid aluminum pole.

31. The middle flexible layer and the inner solid layer extend from the bottom, insertion end of the pole below ground level to above the ground surface.

32. LSPFS commercialized and sold its three-layer pole mesh pool safety fence beginning in 2010.

33. The design of the three-layer pole mesh pool safety fence is readily apparent from an examination of the fencing and contains no proprietary technology.

34. Jason Howard, principal of Plaintiff, was a distributor of LSPFS' three-layer pole mesh pool fence from approximately 2006 until 2012.

35. Due to Defendants' failures to properly secure supplies of its products for its customers, as well as Lupton's mismanagement of LSPFS, Jason Howard ceased working with Defendants and started selling mesh pool fences through Plaintiff.

**LUPTON APPLIES FOR A PATENT ON HIS POOL FENCE MORE THAN FIVE YEARS AFTER IT HAD BEEN SOLD AND PUBLICLY DISCLOSED**

36. On January 27, 2016, Lupton caused to be filed Application No. 15/007,943 titled, "Reinforced Pole for a Swimming Pool Safety Barrier Fence" (the "'943 Application").

37. The disclosure of the '943 Application is generally directed to the triple-layered solid pole mesh pool fence that LSPFS had been selling, offering for sale, and publicly disclosed since 2010.

38. Lupton's filing of the '943 Application triggered the legal duty of candor to the Patent Office, including disclosure of information material to patentability, which requires: "Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section. The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned." 37 C.F.R. § 1.56(a); Manual of

5

1  Patent Examining Procedure § 2001. Applicants before the patent office had a duty to
2  disclose "all information known to that individual to be material to patentability"
3  promptly, generally before the first office action by the Patent and Trademark Office. 37
4  C.F.R. § 1.56(a).

     39.    Lupton's actions and sales, offers for sale, and public disclosures of mesh pool fences were material to the patentability of at least one pending claim in the '943 Application.

     40.    Despite this duty, neither Lupton nor any other individual associated with the filing and prosecution of the '943 Application disclosed any information regarding the triple-layered solid pole mesh pool fence that LSPFS had been selling, offering for sale, and publicly disclosed since 2010.

     41.    In the Office Action dated August 28, 2018, the Examiner reminded the applicant that Information Disclosure Statements were the proper method of disclosing information material to patentability to the Patent Office, particularly since the disclosure of the '943 Application identified two prior art patents in the specification of the '943 Application.

     42.    Neither Lupton nor any individual associated with the prosecution of the '943 Application filed an Information Disclosure Statement during the pendency of the '943 Application.

     43.    The '943 Application issued as U.S. Patent No. 10,316,539 (the '539 Patent) on May 22, 2019.

     44.    Upon information and belief, LSPFS is the exclusive licensee of the '539 Patent.

**LUPTON DECEIVES THE PATENT OFFICE A SECOND TIME**

     45.    On September 15, 2022, Lupton caused to be filed a reissue application for the '539 Patent and was assigned Application No. 17/945,588 (the "'588 Application").

46. As part of the '588 Application, the application submitted a reissue declaration, stating there was an error in the original patent insofar the "original claims claimed more than the patentee had a right to claim."

47. The currently-pending claims of the '588 Application still seek to claim the triple-layered solid pole mesh pool fence that LSPFS had been selling, offering for sale, and publicly disclosed since 2010.

48. Neither Lupton nor any individual associated with the filing of the '588 Application disclosed that the triple-layered solid pole mesh pool fence that LSPFS had been selling, offering for sale, and publicly disclosed since 2010.

49. Although Lupton submitted an Information Disclosure Statement for the '588 Application that included a video predating the filing date of the '943 Application by more than a year, Lupton and those associated with the filing of the '588 Application deliberately chose a video that fails to show all of the known elements of the prior art product, and the video is intentionally deceptive to avoid demonstrating that the applicant would not be entitled to a patent if the applicant had disclosed all of the elements.

50. Despite Defendants being provided with evidence in the form of its own products and sample sections that were sold, offered for sale, and publicly disclosed prior to 2015, as well as product catalogs and a declaration from another former distributor of LSPFS products, Defendants refuse to disclose this information to the U.S. Patent and Trademark Office in a continued effort to deceive the U.S. Patent and Trademark Office.

**DEFENDANTS' ATTEMPTS TO DISRUPT PLAINTIFF'S BUSINESS**

51. Defendants, acting directly and through agents and intermediaries, have stated that they intend to broadly enforce its patent rights once the reissue patent application is issued, including against Plaintiff.

52. Defendants, acting directly and through agents and intermediaries, have accused Plaintiff of infringing the '539 Patent through Plaintiff's sales of its pool fences.

7

53. Defendants have engaged in a "whisper campaign" through the pool fence industry, including to manufacturers, distributors, and customers, that Plaintiff is allegedly infringing upon Defendant's fraudulently obtained patent in an effort to dissuade manufacturers, distributors, and customers from transacting business with Plaintiff.

54. By way of example, Frank Sweet, who operates one of LSPFS' distributors, has repeatedly called at least one of Plaintiff's customers over the past few months accusing Plaintiff of infringing the '539 Patent and declaring that Plaintiff will not be in business much longer due Defendants' planned enforcement of the '539 Patent.

55. Upon information and belief, Mr. Sweet made such assertions against Plaintiff at the direction of Defendants, or at the very least in a reasonably foreseeable manner based on the conduct of Defendants.

## COUNT I

**(Declaratory Judgment of Invalidity of the '539 Patent)**

56. Plaintiff realleges the preceding paragraphs as if fully set forth herein.

57. The claims of the '539 Patent are invalid under Title 35 of the United States Code, including but not limited to 35 U.S.C. § 102 for being sold, offered for sale, and publicly disclosed more than one year prior to the earliest filing date of the '539 Patent.

58. An immediate, real, and justiciable controversy exists between Plaintiff and Defendants regarding the validity of the '539 Patent.

59. Plaintiff seeks a judgment declaring that the claims of the '539 Patent are invalid.

## COUNT II

**(Declaratory Judgment of Unenforceability for Inequitable Conduct of the '539 Patent)**

60. Plaintiff realleges the preceding paragraphs as if fully set forth herein.

61. An immediate, real, and justiciable controversy exists between Plaintiff and Defendants regarding the enforcement of the '539 Patent.

62. Plaintiff seeks a judgment declaring that the claims of the '539 Patent are unenforceable under the doctrine of inequitable conduct.

## COUNT III

**(Declaratory Judgment of Invalidity of the '588 Application)**

63. Plaintiff realleges the preceding paragraphs as if fully set forth herein.

64. The claims of the '588 Application are invalid under Title 35 of the United States Code, including but not limited to 35 U.S.C. § 102 for being sold, offered for sale, and publicly disclosed more than one year prior to the earliest filing date of the '588 Application.

65. An immediate, real, and justiciable controversy exists between Plaintiff and Defendants regarding the validity of the '588 Application.

66. Plaintiff seeks a judgment declaring that the claims of the '588 Application are invalid.

## COUNT IV

**(Declaratory Judgment of Unenforceability for Inequitable Conduct of the '588 Application)**

67. Plaintiff realleges the preceding paragraphs as if fully set forth herein.

68. An immediate, real, and justiciable controversy exists between Plaintiff and Defendants regarding the enforcement of the '588 Application.

69. Plaintiff seeks a judgment declaring that the claims of the '588 Application are unenforceable under the doctrine of inequitable conduct.

**COUNT V**

**(Attempted Monopolization Through Walker Process Fraud in Violation of Section 2 of the Sherman Act)**

70. Plaintiff realleges the preceding paragraphs as if fully set forth herein.

71. During prosecution of the '539 Patent the '588 Application, Defendants, including Defendant Lupton who is the sole named inventor of the '539 Patent, failed to cite material prior art information, publications and other material showing, among other things, the availability of anticipating technology more than one year prior to the priority date of the '539 Patent. Defendants withheld this prior art information, publications and other material from the Patent and Trademark Office with deceptive intent. To the extent Defendants did provide some information regarding this material prior art, they did so in a deceptive fashion intended to conceal critical elements of the information.

72. On information and belief, if Defendants and individuals associated with the prosecution of the '539 Patent had not withheld critical prior art information and/or had not misrepresented the information they did present to the Patent and Trademark Office, the Patent and Trademark Office would not have issued the '539 Patent.

73. Defendant Lupton intentionally concealed from the U.S. Patent Office that Defendants had sold, offered for sale, and publicly disclosed the claimed invention of the '539 Patent more than one year prior to the filing of the application for the '539 Patent.

74. As a result, Defendant Lupton obtained the '539 Patent by knowingly and willfully misrepresenting facts to the Patent and Trademark Office.

75. Defendants' fraud on the United States Patent and Trademark Office is in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. Through this fraud, Defendants engaged in predatory or uncompetitive conduct with a specific intent to monopolize.

76. With respect to the allegations in this claim, the relevant geographic market is the United States.

77. There is a dangerous probability that the Defendants will achieve significant monopolistic power in the U.S. mesh pool fence market. The marketed triple-

layered pole mesh pool fence provides unique benefits of a mesh pool safety fence while maintaining enclosure integrity when a pole is damaged. Other designs for mesh pool fence poles would require significant compromises in safety, or require additional costs in manufacturing, that would make them less competitive in the marketplace.

78. Manufacturing of the triple-layered pole mesh pool fence occurs in only two facilities in the Republic of China. Defendants could easily use its fraudulently obtained patent to cut off all other competitors in the marketplace through enforcement against Plaintiff and through its own-contracted manufacturing facility.

79. By eliminating Plaintiff and other similarly-situated suppliers of triple-layered pole mesh pool fence in the United States, Defendants would eliminate all major competitors in this market, resulting in monopolistic power by the Defendants.

80. As a result of the Defendants' unlawful acts, Plaintiff has suffered and will continue to suffer antitrust injury in an amount to be proven at trial.

81. Defendants' threatened enforcement of the '539 Patent against Plaintiff and the Defendants' anti-competitive conduct have produced significant injury to Plaintiff and its owners. First, they have forced Plaintiff to expend substantial amounts of money, time and human resources in order to defend the allegations. Second, they will cause prices for Plaintiff's products to rise, if Defendants' conduct is continued, to defend these allegations and/or pay royalties to Defendants. Third, Defendants have cost Plaintiff the business of customers and distributors that would have done business with Plaintiff but for the fear of infringing Defendant's fraudulently procured patent, with an overall effect of chilling legitimate competition in the marketplace.

## COUNT VI

**(Tortious Interference with Contractual Relationship or Business Expectancy)**

82. Plaintiff realleges the preceding paragraphs as if fully set forth herein.

83. Defendants have accused Plaintiff of infringing upon its fraudulently obtained patent to Plaintiff's potential and current customers, distributors, and

manufacturer, despite making knowingly false statements or material omissions in its applications to the Patent Office for the '539 Patent and the '588 Application, as set forth herein.

84. Defendants made its knowingly false allegations of patent infringement to Plaintiff's potential and current customers, distributors, and manufacturer knowing that the consequence would be that Plaintiff's potential and current customers, distributors, and manufacturer would have a less favorable view of Plaintiff's products, that Plaintiff's products were somehow "knockoffs" of Defendants' product, and that they would not do business with Plaintiff.

85. Defendants made these statements with the intent to divert Plaintiff's sales to Defendants.

86. Plaintiff had a valid contract and/or a business expectancy with its customers, distributors, and manufacturer, through which it expected to transact business to make and sell its pool fence as described herein.

87. Defendants knew of Plaintiff's relationship with or business expectancy relating to its customers, distributors, and manufacturer.

88. By means of Defendants' fraudulent statements and/or material omissions set forth herein, Defendants intentionally interfered with Plaintiff's contract and/or business expectancy, inducing or causing customers, distributors, and manufacturer to breach its contract and/or terminate its relationship or business expectancy with Plaintiff.

89. As a direct and proximate cause of Defendants' conduct as set forth herein, Plaintiff has been damaged in an amount to be proven at trial.

90. Defendants' conduct as set forth herein was fraudulent, intentional, and malicious, and/or done so as motivated by spite, where Defendants used improper means to seek revenge against Plaintiff's successful business in stark contrast with Defendants' failures to run its own business.

**JURY DEMAND**

91. Plaintiff demands trial by jury on all triable issues triable by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment as follows:

    A. Declaring that the '539 Patent and the '588 Application are invalid;

    B. Declaring that the '539 Patent and the '588 Application are unenforceable;

    C. Enter a declaratory judgment that Plaintiff does not infringe a valid claim of the '539 Patent and the '588 Application;

    D. Finding that the Defendants violated of Section 2 of the Sherman Act, 15 U.S.C. § 2 and awarding treble damages;

    E. Permanently enjoining the Defendants from monopolizing or attempting to monopolize the relevant product and geographic markets, as provided by 15 U.S.C. § 26;

    F. Awarding Plaintiff its lost expectancy in amount to be proven at trial;

    G. An award of its awarded Plaintiff's costs, expenses, and reasonable attorneys' fees in this action; and

    H. Any other legal or equitable relief to which Plaintiff may be entitled.

Dated this 23rd of March, 2023.

**BYCER & MARION**

By: s/Michael B. Marion
Michael B. Marion (Bar No. 035627)
Matthew L. Bycer (Bar No. 025391)
7220 N. 16th Street, Suite H
Phoenix, Arizona 85020
Tel: (602) 944-2277
michael@bycermarion.com
matt@bycermarion.com
*Attorneys for Howard Holdings, Inc.*