**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Howard Holdings Incorporated, | No. CV-23-00503-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Life Saver Pool Fence Systems Incorporated, et al., | |
| Defendants. | |

This is a patent case concerning competitors within the same field. Before the Court is a Motion to Dismiss filed by Life Saver Pool Fence Systems Incorporated ("Defendant Life Saver") and Eric Lupton ("Defendant Lupton") (collectively "Defendants"). (Doc. 27). Howard Holdings Incorporated ("Plaintiff") has filed a Response and Defendants have filed a Reply. (Docs. 29 and 33). For the reasons set forth below, the Court partially grants and partially denies Defendants' Motion.

## I.    Background

This case involves two competitors in the pool fencing market: one with a patent and one without. Defendant Lupton is the President and Director of Defendant Life Saver. (Doc. 18 at ¶ 12 (Plaintiff's Amended Complaint)). Life Saver sells a three-layered pole mesh fencing designed to keep children safe from the dangers of residential pools. (*Id.* ¶¶ 21, 26–30). Plaintiff alleges that Defendant Lupton started selling this fencing through Life Saver when it was incorporated in 2010. (*Id.* ¶¶ 29, 32). Plaintiff also alleges that its Principal, Mr. Jason Howard, worked as one of Life Saver's distributors from 2006 through

2012 and that Mr. Howard ceased working with Life Saver in 2012 because Life Saver failed to consistently secure supplies for its product.  (*Id*. ¶¶ 34–35).

Plaintiff alleges that Defendant Lupton filed an application (Application No. 15/007,943 ("the '943 Application")) to patent his triple-layered fence in 2016 and was granted U.S. Patent No. 10,316,539 ("the '539 Patent").  (*Id*. ¶¶ 36, 43).  Plaintiff alleges that Defendant Life Saver is the exclusive licensee of the '539 Patent.  (Doc. 18 at ¶ 44). The '539 Patent pertains to a triple-layered mesh fence comprised of an outer hollow aluminum pole, inner PVC pipe, and a solid aluminum core.  (*Id.* ¶ 30).  The triple-layered pole is inserted into the ground with a mesh fencing connecting the poles.  (*Id.* ¶ 31). Plaintiff states that this fencing provides unique benefits of a mesh pool safety fence while maintaining enclosure integrity when a pole is damaged.  (*Id.* ¶ 78).  Plaintiff also alleges that other designs for mesh pool fence poles would require significant compromises in safety or require additional costs in manufacturing that would make the product less competitive in the marketplace.  (*Id*.)

Plaintiff alleges that Mr. Lupton fraudulently obtained the '539 Patent as the '943 Application triggered the duty of candor to the United States Patent and Trademark Office ("USPTO") and Mr. Lupton did not disclose how long his invention had been on the market.  (Doc. 18 at ¶¶ 38, 40).  Plaintiff alleges that Life Saver has been selling, offering for sale, and publicly disclosing its invention since 2010—six years prior to Defendant Lupton's initial '943 Application.  (*Id.* ¶ 37). Plaintiff also alleges that Mr. Lupton's reissue application, Application No. 17/945,588 (the "588 Application"), does not subsequently attempt to cure this "deception."  (*Id*. ¶¶ 45–50).

Plaintiff alleges that Defendants have broadly expressed their intent to enforce their patent rights to others within the relevant market.  (*Id*. ¶¶ 51–56).  Plaintiff also alleges that Mr. Lupton has falsely told current and former Life Saver distributors that Plaintiff has admitted to infringing upon the '539 Patent and has agreed to settle the infringement by forfeiting portions of its inventory to Defendant Life Saver—all with the alleged aim of discouraging others from purchasing products from Plaintiff.  (*Id*. ¶ 53).  Plaintiff further

alleges that Mr. Frank Sweet, the operator of a Life Saver distributor, has "repeatedly" called Plaintiff's customers to harass and intimidate them over Defendants planned patent enforcement.  (Doc. 18 at ¶ 55).

## II.  Discussion

Plaintiff's Complaint asserts six separate claims against Defendants: (1) a declaratory judgment for invalidity of the '539 Patent as well as (2) the '588 Application; (3) a declaratory judgment of unenforceability for inequitable conduct of the '539 Patent and (4) the '588 Application; (5) violation of Section 2 of the Sherman Act,15 U.S.C. § 2; and (6) tortious interference with a contractual relationship or business expectancy.  (Doc. 18 at ¶¶ 57–60, 61–63, 64–67, 68–70, 71–84, 85–95).  Defendants argue that Plaintiff's declaratory judgment claims must be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and that Plaintiff's remaining claims should be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6).[1] The Court will address each argument in turn.

### A.  Subject Matter Jurisdiction

Defendants argue that the Court lacks subject matter jurisdiction over Plaintiff's declaratory judgment claims because there is no actual case or controversy regarding the '539 Patent or the '588 Application.  (Doc. 27 at 6–7).  Defendants also argue that third-party actions do not impute an actual case or controversy upon Defendants.  (Doc. 27 at 9).

A motion to dismiss under Rule 12(b)(1) tests the subject matter jurisdiction of the court.  *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039–40 (9th Cir. 2003). The plaintiff must show that the court in question has jurisdiction to hear their case.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A court must dismiss a plaintiff's complaint if it fails to establish subject matter jurisdiction.  *Savage*, 343 F.3d at 1039 n.2.

Generally, subject matter jurisdiction "is a procedural question not unique to patent law," and is therefore governed by regional circuit law.  *Toxgon Corp. v. BNFL, Inc*., 312

---

[1] Unless otherwise noted, all references to a "Rule" herein are in reference to the Federal Rules of Civil Procedure.

F.3d 1379, 1380 (Fed. Cir. 2002).  However, "[w]hether an actual case or controversy exists so that a district court may entertain an action for declaratory judgment of non-infringement and/or invalidity is governed by Federal Circuit law." *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1377 (Fed. Cir. 2012).

Jurisdictional challenges can be either facial or factual.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Federal Circuit law on Rule 12(b)(1) facial or factual attacks does not materially differ from that in the Ninth Circuit.  *See, e.g., Cedars–Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583–84 (Fed. Cir. 1993).  Defendants make a factual challenge here.  (*See* Doc. 27 at 6).  Where the attack is factual, "the court need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In resolving a factual dispute regarding subject matter jurisdiction, a court may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for summary judgment.  *See McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (holding that a court "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction").  Where a factual motion to dismiss is made and only written materials are submitted for the court's consideration, a plaintiff need only establish a prima facie case of jurisdiction.  *See Societe de Conditionnement en Aluminum v. Hunter Eng'g Co.*, 655 F.2d 938, 942 (9th Cir. 1981).

"[W]hen 'ruling on a jurisdictional motion involving factual issues which also go to the merits, the trial court should employ the standard applicable to a motion for summary judgment.'" *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1558 (9th Cir. 1987) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)). "Under this standard, the moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (internal citations omitted).

As an initial matter, the Court must first address whether Plaintiff was required to come forward with evidence outside of its pleadings to show that the Court has subject

matter jurisdiction, as Defendants argue.

### 1. Plaintiff Is Not Required to Come Forward with Outside Evidence to Establish Subject Matter Jurisdiction

Defendants argue that because they support their motion with outside evidence, specifically, with Defendant Lupton's affidavit, and Plaintiff does not, the Court must convert this part of their motion to a motion for summary judgment and use summary judgment standards to decide the motion.  (Doc. 33 at 2).  In its Response, Plaintiff does not rely on an affidavit to support its motion but relies on the allegations in its Amended Complaint.  (*See* Doc. 29).  Defendants further argue that this failure to come forward with extrinsic evidence requires the Court to dismiss Plaintiff's Declaratory Judgment claims for lack of subject matter jurisdiction.  (Doc. 33 at 2–3).

"If a defendant files a 'speaking motion'[2] to dismiss for lack of subject matter jurisdiction . . . the plaintiff 'cannot rest on the mere assertion that factual issues *can* exist.' He must come forward with evidence outside his pleadings to support his jurisdictional allegation."  *Trentacosta*, 813 F.2d at 1558 (internal citations omitted) (emphasis added). Here, Plaintiff does not rest on a mere assertion that issues "can" exist; rather, Plaintiff argues that Defendant Lupton has been telling others that Plaintiff is infringing upon his patent—a fact that Defendants do not expressly contest.

In his affidavit, Defendant Lupton declares that Defendant Life Saver has not (1) asserted its patent rights over Plaintiff; (2) engaged in a "whisper campaign;"[3] (3) or "directed" its distributors to inform anyone about its intent to sue Plaintiff.  (Doc. 27 at Ex. A).  Importantly, as Plaintiff notes, Defendant Lupton does not aver whether *he* has told Life Saver's distributors that Plaintiff is infringing on his '539 patent or if he plans to

---

[2] In the Ninth Circuit, a "speaking motion" is a motion accompanied by outside evidence, such as an affidavit.  *See Trentacosta*, 813 F.2d at 1557 (noting that "defendants' motion to dismiss for lack of subject matter jurisdiction was filed as a 'speaking motion' because it was accompanied by two contracts and an affidavit.").

[3] Plaintiff alleges in its Amended Complaint that that "Defendants have engaged in a 'whisper campaign' through the pool fence industry, including to manufacturers, distributors, and customers, that Plaintiff is allegedly infringing upon Defendant's fraudulently obtained patent in an effort to dissuade manufacturers, distributors, and customers from transacting business with Plaintiff."  (Doc. 18 at ¶ 54).

enforce his patent rights against Plaintiff.  (*See id.*)  Defendant Lupton fails to contest the allegations central to Plaintiff's Amended Complaint in his affidavit—namely, that Defendant Lupton, doing business through Defendant Life Saver, has told current and former Life Saver distributors that Plaintiff has infringed upon the '539 Patent and that this has discouraged distributors from purchasing products from Plaintiff.  Therefore, Plaintiff is not required to come forward with evidence outside of his pleadings and the Court does not need to convert Defendants' motion to dismiss into a motion for summary judgment. *See City of Tombstone v. United States*, 2012 WL 12841240, at *1 (D. Ariz. Sept. 21, 2012); *Trentacosta*, 813 F.2d at 1558–59.

Now that the Court has addressed this threshold matter, it will next address whether it has subject matter jurisdiction over Plaintiff's Declaratory Judgment claims.

### 2.    Plaintiff's Declaratory Judgment Act Claims

Defendants contend that the Court does not have jurisdiction over Plaintiff's Declaratory Judgment claims because there is no case or controversy.  (Doc. 27 at 7).

Plaintiff seeks Declaratory Judgments as to the invalidity and unenforceability of Defendant Lupton's '539 Patent and '588 Application.  The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Declaratory Judgment Act confers "unique and substantial discretion" upon district courts "in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co*., 515 U.S. 277, 286 (1995).

A court has subject matter jurisdiction in a declaratory judgment action when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 127 (2007).  "A declaratory judgment plaintiff must demonstrate, by a totality of the circumstances, the presence of an actual or imminent injury caused by the defendant

that can be redressed by judicial relief." *Ours Tech., Inc. v. Data Drive Thru, Inc*., 645 F. Supp. 2d 830, 836 (N.D. Cal. 2009) (citing *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.,* 482 F.3d 1330, 1338 (Fed. Cir. 2009)).

In the context of a patent case, declaratory judgment jurisdiction generally does not arise "merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007). Instead, jurisdiction arises "where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *Id.* Further, "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party," and where that party "contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights." *Id.* In other words, competitors do not need to risk infringement liability to seek a declaratory judgment for patent ineligibility. *See id*.

As well, an express charge of patent infringement is not necessary to establish an actual controversy; it may be inferred from the conduct of the parties alone. *Shell Oil Co. v. Amoco Corp*., 970 F.2d 885, 888 (Fed. Cir. 1992) ("When the defendant's conduct, including its statements, falls short of an express charge, one must consider the 'totality of the circumstances.'") (internal citation omitted). Both implicit and explicit threats by a patent owner can establish declaratory judgment jurisdiction. *MedImmune*, 549 U.S. at 128 (finding that the elimination of the imminent threat of prosecution does not eliminate Article III jurisdiction).

Defendants argue that this Court lacks subject matter jurisdiction over the Declaratory Judgment claims because no Defendant has taken an affirmative act to assert its patent rights against Plaintiff. (Doc. 27 at 7). To sufficiently allege an "affirmative act" more is required than "a communication from a patent owner to another party, merely

identifying its patent and the other's product line." *3M*, 673 F.3d at 1378–79.  However, an explicit threat to sue for infringement is not necessary because "[t]he purpose of a declaratory judgment action cannot be defeated simply by the stratagem of a correspondence that avoids the magic words such as 'litigation' or 'infringement.'" *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009).  Declaratory judgment jurisdiction may be satisfied when a patent holder "has made no indications that it will file suit but has taken positions or made demands such that a declaratory judgment plaintiff justifiably believes that the defendant patent holder might take such action in the future." *Network Video Techs., Inc. v. Nitek Int'l, LLC*, 2008 WL 4679541, at *5 (N.D. Cal. Oct. 21, 2008).

Analyzing "all the circumstances," the Court concludes that Plaintiff has sufficiently alleged that Defendants have engaged in an affirmative act sufficient to confer jurisdiction over Plaintiff's declaratory judgment claims. *MedImmune, Inc.*, 549 U.S. at 127.  Plaintiff alleges in its Amended Complaint that Defendant Lupton's patent is invalid as a matter of law due to the on-sale bar contained in 35 U.S.C. § 102.[4]  (Doc. 18 at ¶¶ 58, 65).  Plaintiff also alleges that Defendant Lupton has falsely told Defendant Life Saver's current and former distributors that Plaintiff is infringing upon its patent.  (*Id.* ¶ 53).  Plaintiff further alleges that this has discouraged distributors from purchasing products from Plaintiff and that this was a reasonably foreseeable outcome of Defendants' conduct.  (*Id.*)  These allegations, in the aggregate, paint a clear picture of a "substantial controversy" that is "definite and concrete" enough to be addressed by this Court.  *See MedImmune, Inc.*, 549 U.S. at 127 (stating that an implicit threat by a patent owner can establish declaratory judgment jurisdiction).[5]

---

[4] The "on-sale bar" prevents an inventor from patenting an invention that was offered for sale more than one-year before a patent application for the invention was filed.  35 U.S.C. § 102; *see also Medicines Co. v. Hospira, Inc.*, 827 F.3d 1363, 1365 (Fed. Cir. 2016) (stating that "if an invention is 'on sale' more than one year before the filing of an application for a patent on the governing claims, any issued patent is invalid and the right to exclude others from making, using, and selling the resulting product is lost.").

[5] Defendants also argue that alleged actions by third parties are not imputed to Defendant LifeSaver to create an actual case or controversy.  (Doc. 27 at 9).  Because the Court finds that Plaintiff has sufficiently alleged a declaratory judgment claim related to Defendant

1

2

**B.      Failure to State a Claim**

Defendants next argue that Plaintiff's Sherman Act and Tortious Interference claims are legally insufficient under Rule 12(b)(6).  (Doc. 27 at 12).  A motion to dismiss for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6), requires that this Court evaluate the legal sufficiency of Plaintiff's claims.  *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011).  The test requires that the plaintiff present "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  These facts must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" with "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  A complaint that provides "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Nor will a complaint suffice if it presents nothing more than "naked assertions" without "further factual enhancement." *Id*. at 557.  The Court must accept all well-pleaded factual allegations as true and interpret the facts in the light most favorable to the plaintiff. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).  That rule does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678.  If the court dismisses a complaint for failure to state a claim, it must then determine whether to grant leave to amend. *See Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).

**1.      Plaintiff's Sherman Act Claim**

Plaintiff's Sherman Act claim alleges that Defendants are attempting to gain a

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lupton's statements, the Court does not address Defendant's third party liability argument.

monopoly over the "U.S. mesh pool fencing market" through their fraudulently acquired patent in violation of the Sherman Act, 15 U.S.C. § 2. (Doc. 18 at ¶¶ 71–84). Section 2 of the Sherman Act provides: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other persons, to monopolize any part of the trade or commerce . . . shall be deemed guilty of a felony . . ." 15 U.S.C. § 2.

A Sherman Act claim is an antitrust action. "In an antitrust action, the complaint need only allege sufficient facts from which the court can discern the elements of an injury resulting from an act forbidden by the antitrust laws." *Newman v. Universal Pictures*, 813 F.2d 1519, 1522 (9th Cir. 1987). "The traditional claim for attempted monopolization occurs when danger of monopolization is clear and present, but before a full-blown monopolization has necessarily been accomplished." *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 541-42 (9th Cir. 1991). However, patent holders generally enjoy a limited immunity from antitrust claims. *See Nobelpharma AB v. Implant Innovations, Inc*., 141 F.3d 1059, 1071 (Fed. Cir. 1998).

By its very nature, the granting of a patent to its inventor creates a monopoly over the patented material and a patent-holder can generally enforce its rights under an unexpired patent without fear of antitrust liability. *See Simpson v. Union Oil Co*., 377 U.S. 13, 24 (1964). On the other hand, when a patent owner "uses his patent rights not only as a shield to protect his invention, but as a sword to eviscerate competition unfairly, that owner may be . . . liable for antitrust violations when sufficient power in the relevant market is present." *Atari Games Corp. v. Nintendo of Am., Inc*., 897 F.2d 1572, 1576 (Fed. Cir. 1990). In order to "'achiev[e] a suitable accommodation in this area between the differing policies of the patent and antitrust laws,' a distinction must be maintained between patents procured by 'deliberate fraud' and those rendered invalid or unenforceable for other reasons." *Nobelpharma*, 141 F.3d at 1069 (internal citations omitted).

In *Walker Process*, the Supreme Court clarified that a Sherman Act claim for monopolization may be maintained if a plaintiff alleges that "the relevant patent is shown to have been procured by knowing and willful fraud practiced by the defendant on the

Patent Office." *Walker Process Equip. v. Food Mach. & Chem. Corp*., 382 U.S. 172, 179 (1965); *see also Nobelpharma AB*, 141 F.3d at 1071 (stating that *Walker Process* provides the legal grounds on which a patentee may be "stripped of its immunity from the antitrust laws."). Because of this, Sherman Act antitrust claims are commonly referred to as "*Walker Process* claims" when there is a patent involved. *Merch. Techs., Inc. v. Telefonix, Inc*., 2007 WL 464710, at *11 (D. Or. Feb. 7, 2007) (internal citations omitted). Federal Circuit law governs the patent-specific portions of a *Walker Process* claim while regional circuit law governs the antitrust-specific portion of the claim. *Cornucopia Products, LLC v. Dyson, Inc*., 881 F.Supp.2d 1086, 1098 (Fed. Cir. 2012). (D. Ariz. 2012) (citing *Nobelpharma AB*, 141 F.3d at 1068). *Walker Process* essentially adds another element that a plaintiff must sufficiently allege when the alleged antitrust defendant has a patent: knowing and willful fraud upon the PTO. *See id*.

The "first barrier" for a plaintiff alleging a *Walker Process* claim to clear is the "fraud upon the PTO" element. *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1346 (Fed. Cir. 2007) (citing *Nobelpharma*, 141 F.3d at 1068). Said plaintiff must also sufficiently allege the basic elements of an antitrust violation as defined by the regional circuit's law. *Id*. at 1348. To plead a successful attempted monopolization claim in the Ninth Circuit, a plaintiff must establish: "(1) specific intent to monopolize a relevant market; (2) predatory or anticompetitive conduct; and (3) a dangerous probability of success." *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 481–82 (9th Cir. 2021).

Defendants argue that Plaintiff has not sufficiently alleged its attempted monopolization claim because: (1) Plaintiff does not, and cannot, allege that Defendants sought to enforce its patent rights against Plaintiff; and (2) Plaintiff has failed to define the relevant market. (Doc. 27 at 13–14). Defendants specifically argue that a plaintiff must allege that the patentee attempted to enforce their patent rights. (*Id*. at 13). Plaintiff argues that it has defined the relevant market and that the existence of declaratory judgment jurisdiction establishes that Defendants sought to enforce their patent rights. (Doc. 29 at 10).

- 11 -

Typically, a *Walker Process* claim is "raised as a counterclaim by a defendant in a patent infringement suit." *Nobelpharma*, 141 F.3d at 1067. Plaintiff brings its *Walker Process* claim offensively here, however. Whether a plaintiff may bring a *Walker Process* claim offensively is a matter of Federal Circuit law "because it overlaps with how a patent-holder may enforce its patents." *Cornucopia Products, LLC*, 881 F.Supp.2d at 1098. "Under Federal Circuit law, the standards that the Federal Circuit ha[ve] developed for determining jurisdiction in a Declaratory Judgment Action of patent invalidity also define the minimum level of 'enforcement' necessary to expose the patentee to a *Walker Process* claim." *SkyHawke Techs., LLC v. GolfzonDeca, Inc.*, 2020 WL 6115095, at *4 (C.D. Cal. Aug. 3, 2020) (internal citations and quotations omitted). "[T]he same standards governing the declaratory judgment claims for patent invalidity also set forth the minimum level of 'enforcement' necessary to plead a *Walker Process* claim." *Id*.

The Court concluded above that Plaintiff sufficiently alleged its declaratory judgment claims, therefore, Plaintiff has also necessarily alleged sufficient facts to define the minimum level of enforcement necessary to expose Defendant to a *Walker Process* claim. *See SkyHawke Techs., LLC*, 2020 WL 6115095, at *4.

The Court also finds that Plaintiff has sufficiently defined the relevant market. Plaintiff defines the relevant market as the U.S. mesh pool fencing market. (Doc. 18 at ¶ 78). "The consumers do not define the boundaries of the market; the products or producers do." *Newcal Indus., Inc. v. Ikon Off. Sol*., 513 F.3d 1038, 1045 (9th Cir. 2008). The relevant market consists of all products that are "reasonably interchangeable by consumers for the same purposes." *United States v. E. I. du Pont de Nemours & Co*., 351 U.S. 377, 395 (1956). "Reasonable interchangeability" may be determined by looking at price, use, and qualities of the products. *Id.* at 404. While the general market contemplated must include all economic substitutes, "it is legally permissible to premise antitrust allegations on a submarket." *Newcal Indus., Inc.*, 513 F.3d at 1045. To establish a product submarket the antitrust plaintiff "must be able to show (but need not necessarily establish in the complaint) that the alleged submarket is economically distinct from the general product

market." *Id*. "When considering the sufficiency of allegations related to the relevant market, there is no requirement that these elements of the antitrust claim be pled with specificity," and a *Walker Process* claim "will survive Rule 12(b)(6) scrutiny unless it is apparent from the face of the complaint that the alleged market suffers a fatal legal defect." *Portney v. CIBA Vision Corp*., 593 F. Supp. 2d 1120, 1126 (C.D. Cal. 2008).

Plaintiff defines the "relevant market" as the "U.S. mesh pool fence market." (Doc. 18 at ¶ 78). Defendant argues that this definition is "facially unsustainable" because it fails to include all economic substitutes. (Doc. 27 at 15). Indeed, "a complaint may be dismissed under Rule 12(b)(6) if the complaint's 'relevant market' definition is facially unsustainable." *Newcal Indus., Inc.*, 513 F.3d at 1045 (internal citations omitted). But Plaintiff's market definition is not facially unsustainable. Plaintiff's defined market is a submarket of the pool fencing industry: the U.S. mesh pool fencing industry. Plaintiff has alleged that this submarket is distinct and that these types of products are generally more affordable, portable, and aesthetically pleasing than other fencing solutions. (Doc. 18 at ¶ 26). Plaintiff also notes that the product at issue in this case is much more desirable to consumers as it is more durable than other products. (*Id*. ¶¶ 28, 30). Plaintiff has alleged that other designs for mesh pool fence poles would require "significant compromises in safety, or require additional costs in manufacturing, that would make them less competitive in the marketplace." (*Id*. at ¶ 78). In other words, that there is a lack of reasonably interchangeable products within this submarket. *E. I. du Pont de Nemours & Co*., 351 U.S. at 395. From this, the Court finds that Plaintiff has sufficiently defined the relevant market. Defendant's critiques of the relevant product market "fail at this motion to dismiss stage because they are factual critiques that do not show 'that the alleged market suffers a fatal legal defect.'" *Portney*, 593 F. Supp. 2d at 1126 (citing *Newcal Indus., Inc.*, 513 F.3d at 1045).

Defendant also argues, in passing, that Plaintiff "cannot plausible allege" that Defendant Life Saver will acquire a monopoly over the relevant market because there are no allegations concerning Defendants' market share or power. (Doc. 27 at 16). Not so.

1   This argument attacks Plaintiff's burden to sufficiently allege that there is a dangerous
2   probability that Defendants will monopolize the relevant market. *Optronic Techs.,*
3   *Inc*., 20 F.4th at 481–82. To this end, Plaintiff alleges that Defendants are "using their
4   fraudulently-obtained patent to induce distributors into entering exclusive franchise
5   agreements with [Defendant Life Saver], using their unlawfully obtained market power in
6   the mesh pool fence market to dominate the mesh pool fence market." (Doc. 18 at ¶ 79).
7   Plaintiff further alleges that "[w]ithout its fraudulently-obtained patent, Defendants would
8   lack monopoly power to set prices in the mesh pool fence market."  (*Id*. at ¶ 81).
9   Monopolistic power is the "power to control prices or exclude competition." *United States*
10  *v. Grinnell Corp*., 384 U.S. 563, 571 (1966).  Plaintiff alleges that Defendant currently has
11  the power to set prices within the relevant market and that Defendants are using this power
12  to "induce" exclusivity agreements and "dominate" the market.  (Doc. 18 at ¶¶ 79, 81).
13  From this, the Court finds that Plaintiff sufficiently alleges that there is a dangerous
14  probability that Defendants will monopolize the relevant market.

15      Thus, after reviewing Defendants' arguments, the Court concludes that Plaintiff has
16  stated a claim for attempted monopolization under the Sherman Act that is plausible on its
17  face. *See Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

18                    **2.      Plaintiff's Tortious Interference Claim**

19      Lastly, Defendants argue that Plaintiff has failed to state a claim for Tortious
20  Interference with a Contractual Relationship or Business Expectancy because federal
21  patent law preempts Plaintiff's state law claim. (Doc. 27 at 16–17).  Defendant also argues
22  that Plaintiff's claim fails because it fails to identify the existence of a valid contractual
23  relationship or business expectancy.  *Id*.

24                              **i.      Preemption**

25      Federal law does not preempt Plaintiff's claim in this case.  "[F]ederal patent law
26  preempts state-law tort liability for a patentholder's good faith conduct in communications
27  asserting infringement of its patent and warning about potential litigation." *Globetrotter*
28  *Software, Inc. v. Elan Comput. Grp., Inc*., 362 F.3d 1367, 1374 (Fed. Cir. 2004) (citation

1   omitted).  Thus, "to avoid preemption, bad faith must be alleged and ultimately proven,

2   even if bad faith is not otherwise an element of the tort claim." *Id* (internal quotation

3   marks omitted).

4          Here, Plaintiff alleges that "Defendants' conduct []was fraudulent, intentional, and

5   malicious, and/or done so as motivated by spite, where Defendants used improper means

6   to seek revenge against Plaintiff's successful business in stark contrast with Defendants'

7   failures to run its own business." (Doc. 18 at ¶ 95).  Thus, the Court declines to dismiss

8   Plaintiff's claim on preemption grounds at this juncture because Plaintiff has sufficiently

9   alleged that Defendants' communications related to the '539 Patent were not in good faith.

10  *Globetrotter Software, Inc*., 362 F.3d at 1374.

11                  **ii.    Existence of Valid Contractual Relationship or Business**
                            **Expectancy**
12

13         To sufficiently allege a claim for tortious interference with a contractual relationship

14  under Arizona law, a plaintiff must allege: "(1) the existence of a valid contractual

15  relationship; (2) [defendant's] knowledge of the relationship; (3) [defendant's] intentional

16  interference in inducing or causing the breach; (4) the impropriety of [defendant's]

17  interference; and (5) resulting damages." *MDY Indus., LLC v. Blizzard Entm't, Inc*., 629

18  F.3d 928, 955 (9th Cir. 2010) (internal citations omitted).  Tortious interference with a

19  contract "requires, among other things, a contract between the plaintiff and a third party."

20  *Health Indus. Bus. Commc'ns Council Inc. v. Animal Health Inst*., 481 F. Supp. 3d 941,

21  958 (D. Ariz. 2020).

22         Claims for tortious interference with contractual relationship are "virtually

23  identical" to claims for tortious interference with a business expectancy.  *Health Indus.*

24  *Bus. Commc'ns Council Inc.*, 481 F. Supp. 3d at 958.  To state a prima facia case for

25  tortious interference with a business expectancy, a plaintiff must allege: (1) the existence

26  of a valid contractual relationship or business expectancy; (2) that the defendant knowledge

27  of the relationship or business expectancy; (3) intentional interference inducing or causing

28  a breach of the contract or termination of the relationship; and (4) that there was resultant

damage to the party whose relationship or expectancy has been disrupted. *See MiCamp Sols. LLC v. Nat'l Processing LLC*, 2020 WL 3893570, at *3 (D. Ariz. July 10, 2020) (citing *Dube v. Likins*, 167 P.3d 93, 97, 99 (Ariz. Ct. App. 2007)). "To state a claim for tortious interference [with a business expectancy], the alleged facts must show that the expectancy constitutes more than mere hope." *Id.* (citation omitted).

Though the Court agrees with Defendants that Plaintiff has failed to identify the existence of a specific contractual relationship with a third party, Plaintiff alleges that Defendants knowingly made false allegations of patent infringement to Plaintiff's "potential and current customers, distributors, and manufacturer[s]." (Doc. 18 at ¶ 87). Plaintiff also alleges that it had a valid business expectancy to sell its pool fences to "its distributors and other pool fence distributors that were looking to purchase products from Plaintiff." (*Id.* ¶ 90). As a result of these alleged false statements, Plaintiff asserts that it has suffered financially. (*Id.* ¶ 94). Unlike interference with a contractual relationship, under Arizona state law, interference with the "opportunity to obtain customers is sufficient, and interference with a single specific relationship is not required." *MiCamp Sols. LLC*, 2020 WL at *3 (citing *Edwards v. Anaconda Co.*, 565 P.2d 190, 192-93 (Ariz. Ct. App. 1977)).

The Court concludes that Plaintiff has stated a claim for tortious interference with a business expectancy, but not interference with a contractual relationship. Therefore, the Court will grant Defendants' Motion to Dismiss Plaintiff's Tortious Interference claim in part and deny it in part. Further, because it is possible that Plaintiff could allege facts from which the Court could plausibly infer that Defendants committed tortious interference with a contractual relationship, the Court will grant Plaintiff leave to amend this count. *See Lopez v. Smith,* 203 F.3d 1122, 1127–30 (9th Cir. 2000).

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss is **granted in part and denied in part**. (Doc. 27). Plaintiff's claim for tortious interference with a contractual relationship (part of Count VI) is **dismissed**, without prejudice. **Any proposed**

**amendment to Count VI shall be made within fourteen (14) days of this Order**.

The remainder of Defendants' Motion is **denied**.

       Dated this 8th day of December, 2023.

Honorable Diane J. Humetewa
United States District Judge